IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCGARRY & MCGARRY LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17 CV 5779 |
| | ) | |
| BANKRUPTCY MANAGEMENT SOULTIONS, INC., | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

## ORDER AND STATEMENT

On September 14, 2016, Plaintiff McGarry & McGarry, LLP, filed in the Northern District of Illinois a putative class action against Bankruptcy Management Solutions, Inc. (BMS). McGarry alleged that BMS participated in a horizontal conspiracy to fix the manner of charging fees for its bankruptcy software services in violation of Section 1 of the Sherman Act as well as an identical claim for violation of the Illinois Antitrust Act, 740 ILCS 10/3. The court granted BMS's motion to dismiss the Sherman Act count with prejudice and declined to exercise supplemental jurisdiction over the state claim, dismissing it without prejudice. *See McGarry & McGarry, LLP* v. *Bankr. Mgmt. Soultions, Inc.*, No. 16 CV 8914, 2017 WL 2619143 (N.D. Ill. June 16, 2017). McGarry did not appeal the order. Instead, it filed in Illinois state court a single count against BMS alleging the same horizontal conspiracy to fix the manner of charging fees for its bankruptcy software services in violation of the Illinois Antitrust Act, 740 ILCS 10/3 (count I), which BMS promptly removed to this court.[1] (*See* Dkt. 1.) BMS now moves to dismiss the count under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 25.) For the reasons

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. McGarry is a partnership whose members are all citizens of Illinois. BMS shows a good faith basis that the amount in controversy exceeds $75,000.

stated below, the motion is granted.[2]

## BACKGROUND[3]

Like the previous litigation between these two parties, this case involves an alleged horizontal conspiracy among BMS, Epiq Systems, Inc., and TrusteSolutions, LLC—the three largest bankruptcy software providers in the United States—to fix the manner of charging fees for their services. When a debtor files a Chapter 7 petition in bankruptcy, an estate containing the debtor's property is created. The Executive Office of the United States Trustee (EOUST), a division of the United States Department of Justice, then appoints a specific trustee to administer the estate.

Historically, BMS, the largest bankruptcy software provider, directed a trustee who wished to use its software to deposit all of an estate's funds with a partner bank. The partner bank would earn money from the deposit, paying interest to the estate as well as a fee to BMS.[4] But as a result of the financial crisis of 2008, interest rates declined and, not surprisingly, so did the partner bank's ability to pay BMS. In response, BMS decided to implement a new payment structure: it would sell bankruptcy software services only in combination with bankruptcy banking services, and it would charge a set percentage of the funds in the estate's bank account for those combined services. For the new billing structure to succeed in the marketplace, however, BMS needed Epiq and TrusteSolutions to agree to sell their services in the same manner.

---

[2] The court has jurisdiction under 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(b).

[3] Unless otherwise noted, the following facts are taken from plaintiff's complaint and are presumed true for the purpose of resolving the pending motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citation omitted).

[4] The court infers that the interest paid to an estate was less than what would be paid to a normal commercial client.

Sometime before 2011, BMS approached the two entities, and both agreed to implement a similar billing structure. The plan, however, would potentially violate a EOUST rule that prohibited a trustee from using estate funds to pay bank fees, so the three conspirators appealed to the EOUST to suspend the rule, which it did in April 2011. With that barrier removed, BMS, Epiq, and TrusteSolutions put their conspiracy into motion.

In May 2011, Integrated Genomics, Inc., petitioned in Chapter 7 bankruptcy in this District. Eugene Crane was appointed trustee of the estate. At some point, Crane entered into a contract with BMS. As one condition of the contract, Crane agreed to deposit all (or substantially all) of the estate's funds with Rabobank, BMS's partner bank at the time. (*Id.*) Crane also entered into a contract with Rabobank, authorizing it to automatically withdraw a monthly fee from the Integrated estate's account.

McGarry, a law firm located in Chicago, was an unsecured creditor of the Integrated estate. It received $12,472.55 of its allowed claim of $78,308.94. Following Crane's final account and distribution report filed in April 2014, McGarry learned that a $514.16 fee had been paid to Rabobank from the Integrated account. Rabobank paid most, if not all, of that amount to BMS. McGarry alleges that the amount of money paid to BMS was greater than the amount it would have received absent the alleged conspiracy and, without that overcharge, McGarry would have received a larger distribution from the Integrated estate.[5]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on such a motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those

---

[5] The complaint includes additional allegations that are not pertinent to the disposition of the motion.

facts in the plaintiff's favor. *Active Disposal*, 635 F.3d at 886 (citation omitted). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ----, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (citations omitted)).

## ANALYSIS

In the first action, the court granted BMS's motion to dismiss because McGarry was not the appropriate party to bring a claim under federal antitrust law. BMS moves to dismiss McGarry's single count of violation of the Illinois Antitrust Act (IAA) on the same grounds. To bring an antitrust suit, a plaintiff must show two things: they must have standing to bring an antitrust suit, and they must allege that they have sustained antitrust injury. *Greater Rockford Energy & Tech. Corp.* v. *Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993); *Shuffle Tech Int'l, LLC* v. *Sci. Games Corp.*, No. 15 C 3702, 2015 WL 5934834, at *9 (N.D. Ill. Oct. 12, 2015). "Illinois courts have adopted a common-law harmonization provision, meaning that they interpret their antitrust laws in harmony with federal-court decisions interpreting federal antitrust law." *United States ex rel. Blaum* v. *Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 929–30 (N.D. Ill.

2015); *see also* 740 Ill. Comp. Stat. Ann. 10/11 ("When the wording of [the Illinois Antitrust] Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act."). This includes questions of standing.[6] *O'Regan* v. *Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act.").

In the first action, BMS alleged that McGarry was prevented from bringing a federal antitrust suit by the doctrine announced in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).[7] *Illinois Brick* forbids "a customer of the purchaser who paid a cartel price to sue the cartelist, even if his seller—the direct purchaser from the cartelist—passed on to him some or even all of the cartel's elevated price." *Motorola Mobility LLC* v. *AU Optronics Corp.*, 775 F.3d 816, 821 (7th Cir. 2015), *cert. denied*, 135 S. Ct. 2837, 192 L. Ed. 2d 875 (2015). That is, an indirect purchaser generally cannot bring an antitrust suit; rather, the claim belongs to the direct purchaser.[8] Because, according to McGarry, the Integrated estate was

---

[6] The language under the federal antitrust statutes regarding who is able to maintain an antitrust claim is substantially similar to that of the IAA. *Compare* 15 U.S.C. § 15 ("any person who shall be injured in his business by reason of anything forbidden in the antitrust laws . . . .) *with* 740 ILCS 10/7 ("Any person who has been injured in his business or property, or is threatened with such injury, by violation of Section 3 of this Act . . . .).

[7] BMS argues that McGarry should be collaterally estopped from arguing that it has standing to bring a state antitrust claim because the court previously found that McGarry lacked standing to bring a federal antitrust claim. In the prior case, McGarry conceded that it was not a purchaser of any kind; therefore, it had not participated in any market. 2017 WL 2619143 at *3. The issue of whether McGarry had standing under the IAA was not decided. While Illinois courts look to federal law to guide their interpretation of the IAA, they are not bound by the decisions of federal courts. *See Gilbert's Ethan Allen Gallery* v. *Ethan Allen, Inc.*, 162 Ill. 2d 99, 103, 642 N.E.2d 470, 472 (1994) (stating that federal case law "is merely a guide to use in interpreting" the IAA and that federal decisions are not binding on Illinois courts). Accordingly, McGarry is not estopped from arguing that it has standing to bring a state antitrust claim.

[8] While there are narrow exceptions to this rule, McGarry did not convince the court that it fit within them.

the direct purchaser, this court held that the estate, through its trustee, was the proper party to bring an antitrust claim.[9]

But while "the Supreme Court held [in *Illinois Brick*] that only the immediate purchaser of goods may sue under antitrust laws, Illinois now provides by statute that indirect purchasers may recover as well." *Cty. of Cook* v. *Philip Morris, Inc.*, 817 N.E.2d 1039, 1045, 353 Ill. App. 3d 55 (2004). This difference between Illinois and federal antitrust law does nothing to help McGarry, however, for it has admitted that it is not a purchaser at all. McGarry first cites to several cases allowing non-purchasers to bring antitrust suits. (Dkt. 28 at 4 (citing *Blue Shield of Virginia* v. *McCready*, 457 U.S. 465 (1982); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 360 (S.D.N.Y. 2016); *In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 441 (S.D.N.Y. 2015); *Hanover 3201 Realty, LLC* v. *Vill. Supermarkets, Inc.*, 806 F.3d 162, 172 (3d Cir. 2015).) The reasoning underlying the cited circuit and district opinions springs from the Supreme Court's decision in *McCready*. There, the Supreme Court recognized that a party who was neither a purchaser nor competitor in the relevant market could bring an antitrust action if the injury suffered "was inextricably intertwined with the injury the conspirators sought to inflict." *McCready* at 484. "To be inextricably intertwined with the injury to competition, the plaintiff[] must have been manipulated or utilized by [d]efendant as a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographical market." *In re Zinc Antitrust Litig.* at 360; *In re Aluminum Warehousing Antitrust Litig.* at 422 (same). As in the first action, McGarry fails to explain how its injury was inextricably intertwined with the conspiracy to fix the manner of charging fees for bankruptcy software. The plaintiffs in the cited

---

[9] McGarry's motion to reopen the bankruptcy case and for derivative standing to assert antitrust claims was denied, in part because the trustee's refusal to reopen the estate was justified. *See* Order at 5, In re Integrated Genomics, Inc., 11 B 19086 (Bankr. N.D. Ill. Nov. 21, 2017).

cases, while not purchasers in the markets targeted by the conspiracies, were, however, purchasers in other markets. *See Loeb Indus., Inc.* v. *Sumitomo Corp.*, 306 F.3d 469, 482 (7th Cir. 2002) (stating that *McCready* "recognizes that different injuries in distinct markets may be inflicted by a single antitrust conspiracy"). McGarry has participated in no market. Rather, it is simply a creditor of an estate that allegedly was injured by an antitrust violation. The Seventh Circuit stated more than three decades ago that "[m]erely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute 'antitrust injury' sufficient to confer antitrust standing." *Sw. Suburban Bd. of Realtors, Inc.* v. *Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987); *see also Cong. Bldg. Corp.* v. *Loew's, Inc.*, 246 F.2d 587, 590 (7th Cir. 1957) ("The courts have uniformly denied recovery to . . . creditors . . . who claimed injury as the result of alleged antitrust violations."); *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 533–34, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (discussing with approval *Loeb v. Eastman Kodak Co.*, 183 F. 704, 709 (3d Cir. 1910), which held that a creditor of an injured business does not have standing to assert an antitrust claim). McGarry cites no case where a creditor brought a claim under the IAA or the federal antitrust laws based on an injury sustained by its debtor (nor has the court found one).

Rather, McGarry points out that a bankruptcy estate is different from a company in that the former does not exist to generate a profit. Therefore, the relationship between the Integrated Estate and McGarry "more closely resembles a principal/agent relationship, where the principal has standing to sue despite the general derivative standing rule." (Dkt. 28 at 8.) The court struggles to understand McGarry's argument and does not see how the Integrated Estate would be McGarry's agent, as it would seemingly follow that a bankruptcy estate would be the agent of each of its individual creditors. If anyone is the agent of the bankruptcy estate, it is the trustee.

As the court has pointed out, because a trustee in bankruptcy owes a fiduciary duty to an estate's creditors, *Matter of Salzer*, 52 F.3d 708, 712 (7th Cir. 1995), the trustee could "pursue the debtor's claim against the defendant on behalf of all the debtor's creditors equally, without preference for any particular creditor. That injury is much more efficiently measured on behalf of the debtor, moreover, rather than in fortuitous segments claimed by those creditors who happen to sue." Phillip E. Areeda *et al.*, ANTITRUST LAW § 353c (4th ed. 2014).

## ORDER

Accordingly, BMS's motion to dismiss (dkt. 25) is granted. McGarry's claim is dismissed with prejudice. This case is terminated.

Date: July 2, 2018

_____
U.S. District Judge Joan H. Lefkow